

# NUMBER 13-25-00529-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

TURBO RESTAURANTS, LLC,                                          Appellant,

v.

900 S. JACKSON, LLC,                                              Appellee.

## ON APPEAL FROM THE 430TH DISTRICT COURT
## OF HIDALGO COUNTY, TEXAS

## OPINION

### Before Justices Peña, West, and Fonseca
### Opinion by Justice Fonseca

Appellant Turbo Restaurants, LLC (Turbo) appeals the trial court's grant of summary judgment in favor of appellee 900 S. Jackson, LLC (900). 900 claimed Turbo breached its lease with 900 by failing to pay rent, among other things, and 900 successfully argued for summary judgment. Because there is a fact issue regarding whether 900 failed to reasonably mitigate its damages, we affirm in part, reverse in part,

and remand for further proceedings.

## I.    BACKGROUND

Turbo operated an Arby's restaurant located at 900 South Jackson Road in McAllen. Turbo initially leased the property from 900's predecessor in interest. On December 14, 2021, 900 purchased the property and became Turbo's new landlord, assuming the lease. According to 900, the rental commencement date was December 22, 2018, and, per the lease, the term lasted until November 30, 2033. The lease obligated Turbo to pay both a monthly base rent and annual base rent that scaled upwards based on how far into the lease term it was. The lease also imposed a late charge for failure to timely pay rent each month. Finally, the lease required Turbo to continuously occupy and use the property as an Arby's.

900 claimed Turbo failed to (1) operate the property as an Arby's, (2) maintain the property, and (3) timely pay rent and other lease expenses. On April 26, 2023, 900 sent Turbo a default notice informing Turbo of these failures as well as requesting Turbo correct its noncompliance by paying rent within five days and allowing 900 access to the property. 900 claimed Turbo paid the delinquent April 2023 rent, but that this resulted in late payment of May and June 2023 rent. Turbo also allegedly continued to fail to operate the premises as the lease required.

The record reflects Turbo attempted to re-lease the property to "the Ortiz family." However, in a June 7, 2023 email, 900 rejected this proposed candidate due to financial strength concerns. 900 claimed it then received a June 8, 2023 letter of intent from a broker regarding Valvoline LLC (Valvoline) as a potential new tenant, which was attractive to 900 due to the fifteen-year lease term. 900 sent a lease termination notice to Turbo on

2

June 20, 2023, and excluded Turbo from the property. The termination also notified Turbo of 900's intent to pursue collection of delinquent rent, all future rent, late charges and interest, costs to release the property including broker fees, and other litigation costs.

900 claimed it mitigated its damages by entering into a new lease agreement with Valvoline on January 31, 2024, with a rent commencement date of August 1, 2025. However, before the Valvoline lease was executed, Turbo's counsel sent a November 8, 2023 letter to 900's counsel discussing three other possible tenants to lease the property and included letters of intent from each with proposed rent higher than Turbo's or Valvoline's rent. The letter also discussed that Turbo believed 900 reconsidered the lease termination because 900 continued to accept rental payments after June 20, 2023. The letter thus requested 900 return rental payments made after that date. 900 refused further correspondence and decided to pursue the Valvoline lease agreement with terms less favorable than those presented in the letters of intent.

900 subsequently filed suit on August 19, 2024, asserting breach of contract for Turbo's noncompliance with lease terms. As part of its alleged damages, 900 demanded recompense for lost rent for the period between termination and 900 mitigating its damages by finding a new tenant, and for the increase in interest rates between lease periods. Turbo filed its answer on September 17, 2024, asserting a general denial and that 900 failed to fully mitigate its damages.

On August 5, 2025, 900 filed its motion for traditional summary judgment arguing it was uncontroverted Turbo failed to pay rent and abandoned the premises and, therefore, there was no genuine dispute of material fact. *See* TEX. R. CIV. P. 166a(h)(2). 900 asserted damages of $289,000 for all rent owed until the commencement date of the

new lease, August 1, 2025. 900 also claimed damages for maintenance costs after Turbo abandoned the property, broker fees to secure a new tenant, the difference between the lesser rent charged to the new tenant and Turbo's rent, and the amount in higher interest 900 owed pursuant to its third-party loan agreement. 900 also claimed attorney's fees and litigation costs. 900's primary evidence supporting these damages was an affidavit from its president that replicated most of its petition language. Attached to this affidavit was the lease, tenant estoppel certificate, notice of default, lease termination, new lease with Valvoline, damages calculation sheet, and interest worksheet.

Turbo responded to the summary judgment motion arguing there were material fact disputes regarding 900's claimed damages, including the causation of those damages and whether certain damages were legally recoverable in Texas. Specifically, Turbo asserted that before it vacated the premises, it hired a broker, marketed the premises, and presented multiple qualified candidates to 900 which would pay higher rental rates than Turbo or Valvoline. Turbo argued 900's rejection of each proposed tenant created a fact issue regarding its failure to mitigate, as several were reasonable replacements. Turbo also argued 900 waited several months to market or search for a new tenant and that the new tenant is paying less rent than the other proposed tenants. Turbo contested the claimed broker fees damages for the same reason.

Additionally, Turbo argued there were fact disputes regarding when it stopped paying rent to 900 and that 900 represented to Turbo it was current on its rent obligations as of June 28, 2023. Turbo also asserted the lease did not oblige it to pay common area maintenance charges or security charges. Finally, Turbo disputed the damages for loan interest increase, arguing the interest rate increased prior to the default and 900 failed to

4

include any evidence of the increased loan costs.

900 replied arguing Turbo's exhibits were unsupported hearsay and should be stricken. Further, 900 argued its duty to mitigate was only contractual and discretionary; therefore, 900 argued, it was not obliged to consider Turbo's proposed alternate tenants. 900 also asserted it secured a new tenant within two months of Turbo's default, and this new tenant was superior to any tenant Turbo proposed. Finally, 900 argued Turbo's other payments were gratuitous due to the lease's termination but that it would credit these payments in claimed damages.

The trial court held a hearing on 900's motion on September 9, 2025. Both parties reasserted their written arguments, and 900 sought a ruling striking Turbo's exhibits. On September 22, 2025, the trial court signed an order granting 900's motion for summary judgment and awarding 900 actual damages of $470,379, post-judgment interest, reasonable and necessary attorney's fees, and costs of court, but did not rule on 900's objections to Turbo's exhibits. The trial court entered a final judgment on October 3, 2025. This appeal followed.

## II.   ANALYSIS

The parties do not dispute the trial court's grant of summary judgment as to liability. Instead, Turbo argues by three issues the trial court erred in granting summary judgment as to certain damages. However, we resolve this appeal on the first issue.

### A.   Standard of Review

We review a trial court's ruling on a summary judgment motion de novo. *Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 278 (Tex. 2018). "To prevail on a traditional motion for summary judgment, the movant must show that no genuine issue

of material fact exists and that it is entitled to judgment as a matter of law." *Id.* (citing TEX. R. CIV. P. 166a(a)(1)). As part of our review, "we must credit evidence favoring the non-movant, indulging every reasonable inference and resolving all doubts in his or her favor." *Lujan v. Naivstar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). However, if the movant carries their burden, "the burden shifts to the non[-]movant to raise a genuine issue of material fact precluding summary judgment." *Id.*

Generally, when a plaintiff moves for summary judgment on its own affirmative claim, "it must conclusively prove all essential elements of its claim as a matter of law." *Wyrick v. Bus. Bank of Tex., N.A.*, 577 S.W.3d 336, 346 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *see MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). But "a plaintiff is not required to move for summary judgment on the defendant's affirmative defenses and has no obligation to negate those defenses." *Marx v. FDP, LP*, 474 S.W.3d 368, 377 (Tex. App.—San Antonio 2015, pet. denied). Instead, "[i]f the party opposing a summary judgment relies on an affirmative defense, he must come forward with summary judgment evidence sufficient to raise an issue of fact on each element of the defense to avoid summary judgment." *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984).

## B.    Mitigation Damages

By its first issue, Turbo argues summary judgment should not have been granted as to damages because there was a fact issue regarding whether 900 mitigated its damages. "A landlord has a duty to mitigate damages if a tenant abandons the leased premises in violation of the lease." TEX. PROP. CODE § 91.006(a). Landlords cannot contract out of this duty. *Id.* § 91.006(b). "The landlord's duty to mitigate requires him to use 'objectively reasonable efforts' to re-lease the premises to a tenant 'suitable under

6

the circumstances.'" *White v. Harrison*, 390 S.W.3d 666, 675 (Tex. App—Dallas 2012, no pet.) (quoting *Aus. Hill Country Realty, Inc. v. Palisades Plaza, Inc.*, 948 S.W.2d 293, 299 (Tex. 1997)). This does not mean just any willing tenant. *Hoppenstein Props., Inc. v. Schober*, 329 S.W.3d 846, 849 (Tex. App.—Fort Worth 2010, no pet.). But 900's recovery is barred to the extent the damages could have been reasonably avoided. *White*, 390 S.W.3d at 675. "The reasonableness of [900's] efforts is an issue for the fact finder." *Id.*

Texas law treats failure to mitigate as an affirmative defense. *Hoppenstein Props.*, 329 S.W.3d at 849 (citing *Aus. Hill Country Realty*, 948 S.W.2d at 300). Therefore, to be successful on its defense, a tenant bears the burden to demonstrate the landlord failed to mitigate and the amount by which the landlord could have reduced his damages. *White*, 390 S.W.3d at 675. Turbo is not entitled to any reduction in damages "if it does not prove the amount of damages that could have been avoided." *Hoppenstein Props.*, 329 S.W.3d at 849; *see Lester v. Logan*, 893 S.W.2d 570, 577 (Tex. App.—Corpus Christi–Edinburg 1994, writ denied) (holding that "[b]ecause [appellant] did not present evidence showing the amount of damages which were increased by [appellee's] failure to mitigate, . . . the trial court did not reversibly err by refusing [an instruction on failure to mitigate]"); *Cocke v. White*, 697 S.W.2d 739, 745 (Tex. App.—Corpus Christi–Edinburg 1985, writ ref'd n.r.e.) (same where "[a]ppellant presented no evidence of the amount by which damage would have been decreased had appellees taken the steps suggested by appellant").

Turbo contends 900 failed to mitigate its damages because Turbo had presented at least four alternate tenants by November 2023, 900 failed to sign a lease with a new tenant until January 2024, and 900 did not collect rent until August 2025. Turbo further argues the record lacks evidence of when 900 listed the property, if it hired a broker, or

7

why it failed to communicate with Turbo after Turbo attempted to find a replacement tenant. Conversely, 900 argues it was not obliged to consider any of Turbo's proposed tenants and received the letter of intent from Valvoline before it terminated Turbo's lease. 900 further argues Turbo failed to prove the amount of damages that could have been avoided.

We agree Turbo failed to pinpoint an exact amount of damages that could have been avoided, but Texas caselaw does not require a litigant to show a precise damages figure to generate a fact issue on the failure to mitigate. *See Customer Ctr. of DFW Inc. v. RPAI N. Richland Hills Davis Ltd. P'ship*, No. 02-20-00189-CV, 2021 WL 2149623, at *4 (Tex. App.—Fort Worth May 27, 2021, no pet.) (mem. op.). Evidence of delinquent efforts to relet a premises, such as a long delay in starting a new lease, declining to show a premises as available on a landlord's website, failure to display a "for-rent" sign, or rejecting without explanation new tenants presented by the delinquent tenant, is all sufficient to generate a fact issue on mitigation damages. *Id.*; *see also Hygeia Dairy Co. v. Gonzalez*, 994 S.W.2d 220, 224–26 (Tex. App—San Antonio 1999, no pet.) (en banc op. on reh'g). An imprecise record on the exact amount of mitigation of damages will not prevent reversal. *See Customer Ctr. of DFW Inc.*, 2021 WL 2149623, at *4. We agree with our sister court's holding and apply it.

Here, Turbo presented similar evidence to that in *Customer Center of DFW Inc*. A letter from Turbo's counsel indicated Turbo obtained a multitude of possible alternate tenants by November 2023 that were ready to relet the premises at a higher rental rate than Valvoline.[1] Turbo also highlighted 900's failure to sign a lease with a new tenant until

---

[1] The record indicates 900 objected to Turbo's summary judgment evidence as deficient for failure

8

January 2024, seven months after terminating its lease with Turbo and two months after rejecting 900's proposed tenants. While 900 is correct in a general sense that it had no obligation to consider these particular tenants, 900 did have an obligation to make reasonable efforts to mitigate and must have at least some reasonable explanation for rejecting 900's proposed tenants. *See id.* 900 contends it has such an explanation and obtained an offer with a longer lease term from a new potential tenant before terminating Turbo, but does not explain why it failed to sign an agreement accepting such offer for seven months.

While there may be a reasonable explanation, it is a bona fide issue for the fact finder to determine whether 900's efforts and explanations were in fact reasonable. *See White*, 390 S.W.3d at 675; *Customer Ctr. of DFW Inc.*, 2021 WL 2149623, at *4; *Hygeia Dairy Co.*, 994 S.W.2d at 224. Likewise, 900's contention that it was reasonable not to collect rent between January 2024 and August 2025 due to standard business practices is subject to fact finder review. *See White*, 390 S.W.3d at 675. In fact, these varying fact issues make it nigh impossible for Turbo to demonstrate an exact amount of reduced damages because 900 could have signed a new lease with multiple possible new tenants. *But see Cole Chem. & Distrib., Inc. v. Gowing*, 228 S.W.3d 684, 688 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (holding even if fact issue on failure to make reasonable efforts exists a tenant is not entitled to assert the affirmative defense of failure-to-mitigate if *no evidence* of amount of damages increase is presented). Further, 900's contention the

---

to authenticate. However, 900 failed to obtain the trial court's ruling on these objections and did not object to the trial court's lack of ruling. *See* Tex. R. App. P. 33.1(a). "Without both an objection and a ruling, the complained-of evidence remains part of the summary judgment record and should be considered by the court of appeals in reviewing the trial court's judgment." *FieldTurf USA, Inc. v. Pleasant Grove Indep. Sch. Dist.*, 642 S.W.3d 829, 837 (Tex. 2022). Therefore, we consider Turbo's exhibits. *See id.*

9

lease gave it total discretion in selecting a new tenant is irrelevant as 900 cannot contract out of its statutory duties to mitigate. *See* TEX. PROP. CODE § 91.006(b). Retaining discretion in selecting a new tenant does not relieve 900 of its duty to mitigate its damages via objectively reasonable efforts. *See id.* § 91.006(a); *White*, 390 S.W.3d at 675.

Regardless of the impreciseness of its damages reduction claim, Turbo has met its evidentiary threshold on its affirmative defense. It presented some evidence that 900's decision not to mitigate caused further damages, i.e., the delay between termination of its lease with Turbo and signing a new lease resulting in potential lost rent, and signing a lease at a lower rent amount than offered by multiple other potential tenants. *See Zoanni v. Hogan*, 715 S.W.3d 47, 82 (Tex. App.—Houston 2024, pet. denied); *Hygeia Dairy Co.*, 994 S.W.2d at 224–25. Turbo also highlighted the lack of evidence in the record as to whether 900 immediately marketed the property or sought a new tenant, which potentially contributed to an increased amount of lost rent. While there may be reasonable explanations for these choices, it is the fact finder's job to determine reasonableness. *White*, 390 S.W.3d at 675.

We sustain Turbo's first issue and reverse and remand for a new trial on damages only. Because disposition of this issue renders Turbo's second and third issues moot, we need not review those issues. *See* TEX. R. APP. P. 47.1; *see also McGraw v. Brown Realty Co.*, 195 S.W.3d 271, 279 (Tex. App.—Dallas 2006, no pet.) (ordering new trial on all damages after finding fact issue regarding failure to mitigate without examining arguments on lack of credit for repairs and improvements to the property).

### III. CONCLUSION

We reverse the trial court's grant of summary judgment as to damages only, affirm

the remainder of the summary judgment, and remand for further proceedings consistent

with this opinion.

YSMAEL D. FONSECA
Justice

Delivered and filed on the
9th day of July, 2026.